**George E. BLANCHARD, Plaintiff-Appellant,**

v.

**GULF OIL CORPORATION, a Pennsylvania corporation, Defendant-Appellee.**

No. 81–3763

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 27, 1983.

See also, 5th Cir., 575 F.2d 1140; 5th Cir., 590 F.2d 594.

Ross & King, Walter E. Ross, Jr., Biloxi, Miss., Bryan, Nelson, Allen, Schroeder & Cobb, Harry R. Allen, Gulfport, Miss., for plaintiff-appellant.

Hammett, Leake & Hammett, Eldon T. Harvey, III, J. Gregg Collins, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, POLITZ and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

This is an appeal from a summary judgment finding defendant Gulf to be plaintiff's "statutory employer" under the Louisiana Workmen's Compensation Act, and

---

therefore immune from tort liability to plaintiff for his on-the-job injuries. Agreeing that no genuine issue of material fact exists in this case, we affirm.

At the time of his injury which gave rise to this suit, George Blanchard was employed as a mechanic for Engine & Gas Compression Service, Inc. ("Engine Gas"). Engine Gas was under contract to Gulf Oil Corporation ("Gulf") to provide maintenance and repair services for Gulf's compressors at its West Bay Compressor Station in the Mississippi River Delta.

While overhauling a compressor engine with another Engine Gas employee, Blanchard became covered with oil. He then slipped and injured his back when a 150 pound compressor bearing cap fell on him while he was trying to replace it. Blanchard suffered permanent partial disability.

Blanchard sued Engine Gas and Gulf in the United States District Court for the Southern District of Mississippi for damages under the Jones Act and under Louisiana tort law. The district court granted summary judgment on the Jones Act claim which this Court affirmed. *Blanchard v. Engine & Gas Compression Services, Inc.,* 575 F.2d 1140 (5th Cir.1978). The district court tried the tort claim and entered a directed verdict against Blanchard on the ground that Gulf was Blanchard's "statutory employer." A statutory employer is immune from tort liability for its "employee's" on-the-job injury because the injured employee's exclusive remedy is under the Louisiana Workmen's Compensation Act. On the prior appeal, we certified to the Louisiana Supreme Court the question of whether Blanchard was Gulf's statutory employee. *See id.* at 1145. That court, however, declined to answer the question. Having no other alternative, this Court established the test for divining whether a statutory employment relationship exists, and remanded the case so that the district court could make its determination by applying the test. *Blanchard v. Engine & Gas Compressor Services, Inc.,* 613 F.2d 65 (5th Cir.1980) (*"Blanchard II"*). We noted, "The remand does not necessarily envisage a full dress trial. Based upon facts, not what a party says the facts are or what such facts say, the case may or may not survive a motion for summary judgment...." *Id.* at 72. The case did not, after having been transferred to the Eastern District of Louisiana, and we affirm.

Under the Louisiana Workmen's Compensation Act, LSA–R.S. 23:1061, a principal is liable for workmen's compensation benefits for employees of any contractor who is performing work which is part of the principal's "trade, business or occupation."[1] Such a principal is known as a "statutory employer." Under the Louisiana Workmen's Compensation scheme, an injured employee's recovery from his employer for an on-the-job injury is limited to the compensation benefits.[2] A statutory employer can-

---

1. LSA–R.S. 23:1061 states:

   "§ 1061. Principal contractors; liability

   "Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

   "Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."

2. LSA–R.S. 23:1032 states:

   "§ 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws

   "The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease

not be sued in tort for such an injury. If Gulf was Blanchard's statutory employer, Gulf cannot be liable in tort; Workmen's Compensation benefits are Blanchard's exclusive remedy against Gulf.

The test for determining whether a statutory employment relationship exists comes from our opinion in *Blanchard II.* There, this Court determined that the "essential to business" test—whether the activities of the contractor and its employees were essential to the principal's business—is not "the controlling factor in the identification of a statutory employer." *Blanchard II,* 613 F.2d at 71. Instead, we promulgated the standard of:

" . . . whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary practice of the principal or others in the same operational business.

"More specifically, we should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal . . . . If, however, the principal does not normally engage in this type of activity, or if it is not

normally a part of his practices, then it is necessary to determine if others engaged in business similar to that of the principal customarily do this type of work or if it is an integral part of their businesses . . . . "

The district court found the work to be an integral part of Gulf's business customarily performed by Gulf employees.

Although in considering a motion for summary judgment, all doubts must be resolved against the moving party, no genuine issue as to any material fact existed here. *Murphy v. Georgia-Pacific Corp.,* 628 F.2d 862 (5th Cir.1980). Fed.R.Civ.P. 56(c). Upon reviewing the trial transcript, affidavits and depositions, we are convinced the district court correctly evaluated the evidence and properly granted summary judgment.

The district court's opinion illustrated that even plaintiff believed the repair of compressors was an integral part of Gulf's business. Blanchard, responding to Gulf's attorney, stated that compressors are essential to the recovery of petroleum and that if the engines were to be shut down, no oil and gas could be produced.[3] If the engines were in disrepair, Gulf could not fulfill its business purpose of producing oil and gas.[4]

for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word 'principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."

**3.** The district court's opinion cites the following:

"Q. Now, you have also worked in the field in the drilling for petroleum products haven't you?

A. Yes, sir.

Q. Now, it's within your knowledge, isn't it, Mr. Blanchard, that these compression stations are absolutely essential to the recovery of petroleum from underground, and gas too?

A. Yes, sir, it is.

Q. There's no question in your mind about that, is there?

A. You have got to have the compressors to move the gas; yes sir.

Q. Precisely. And you know that, don't you?

A. Yes, sir, I know that.

Q. All right. And you know that if the compression engines stop and cease to run that the gas is flared into the atmosphere?

A. Some cases it is; yes.

\*      \*      \*      \*      \*      \*

Q. . . . If all of these engines shut down at West Bay, then there would be no production of oil and gas out of this particular area would there?

A. No sir; there would be no gas moved at all."

**4.** We do not suggest that whatever is "essential" is thereby necessarily also "integral." This case, however, involves Gulf compressors, owned and operated by it, in the performance of its usual and customary business; the work involved was on-site maintenance and repair. See note 5 below.

A Louisiana court, the district court noted, found in a similar situation that "[i]t would be unrealistic to deny that the installation and maintenance of the compressor in question was an essential and integral part of the activities of [defendant oil company] in the production of oil." *Allen v. United States Fire Insurance Co.,* 222 So.2d 887, 891 (La.App.1969). *Accord, Perry v. Texaco Co.,* 320 So.2d 310 (La.App.1975).

Recently, this Court decided *Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d 350 (5th Cir.1982), which controls the case under consideration. In *Barrios,* the issues, and even the parties, were nearly identical to those of the case *sub judice.* Plaintiff, an employee of Engine Gas, was injured while repairing a Gulf compressor. Engine Gas was under contract to provide repair and maintenance service on Gulf's compressor stations. Plaintiff brought an action in tort against Gulf. Finding that Gulf was Barrios' statutory employer, the district court granted summary judgment for Gulf. Because the parties (Gulf and Engine Gas), the activity (employee's repair of compressors), and the issue (whether Gulf is a statutory employer of the concerned Engine Gas employees) are virtually identical in *Barrios* and the case before us, we are guided by our holding in *Barrios:*

> "[T]he repair and maintenance work being performed by the Engine & Gas mechanics was an 'integral part' of Gulf's customary work. Gulf is in the business of producing, refining, and selling gas and oil. After a well ceases to flow from its natural reservoir, it is necessary to lift artificially the gas or oil out of the well to maintain production. The compressors

on which the Gulf and Engine & Gas mechanics worked were used to compress natural gas to approximately 900 pounds per square inch, which was returned to the well through a piping system that lifted the oil and gas to the surface. It was essential for Gulf to keep the compressors in top working condition at all times." *Id.* at 355

Just as summary judgment was proper against Barrios, so was it proper against Blanchard.

The district court determined that Gulf employees customarily did the work Blanchard was performing—changing bearing caps—and that this work was an integral part of Gulf's business, so that Blanchard was Gulf's statutory employee. We agree.

Gulf supported its motion for summary judgment with affidavits to the effect that the Gulf mechanics at the compressor stations were qualified to, and did, change compressor bearing caps.[5]

Opposing the motion for summary judgment, Blanchard offered his own affidavit and that of Pollard Lee, that they had never seen Pete Laverde, Gulf's mechanic at the West Bay Compressor Station, perform this type of repair work.

Affidavits offered to support or oppose a motion for summary judgment must be made on personal knowledge. Fed.R.Civ.P. 56(e). The district court properly found the statements of Blanchard and Lee unworthy of attention because "since [the affiants] were not present at the West Bay Station or in contact with Laverde on a routine or daily basis their testimony for purposes of summary judgment has crossed over that

---

5. *See* Affidavits of C.B. Guttry, Record at 349; Wayne Jones, Record at 352; Albert Cosse, Record at 354; Cecil Buras, Record at 356.

We also observe that the contract between Gulf and Engine Gas simply called for the latter to perform "maintenance" on a "when requested" basis. Cf. *Elliott v. Louisiana Power & Light Co.,* 671 F.2d 865 at 868, *aff'd on rehearing,* 679 F.2d 430 at 431 (5th Cir.1982) (fact issue whether massive project for conversion of the boiler system, involving new construction, was ordinary maintenance). The undis-

puted facts here show the instant situation to be completely different than that in *Elliott. Williams v. Shell Oil Company,* 677 F.2d 506 (5th Cir.1982), is similar to *Elliott* and is distinguishable on the same basis.

We further note that plaintiff's allegations of negligence suggest close supervision and control by Gulf (*e.g.,* Gulf refused permission to drain oil, failed to furnish adequate manpower assistance, and "permitted" plaintiff to work too long).

fine line and has become conclusory rather than based on personal knowledge."[6]  *See also Ortego v. Union Oil Co.,* 667 F.2d 1241, 1243 (5th Cir.1982) (bold assertions made without personal knowledge do not raise genuine issues of material fact); *Barnes v. Sun Oil Co.,* 362 So.2d 761, 763 (La.1978).

Absent those conclusionary hearsay statements in the affidavits, the plaintiff had no adequate basis on which to meet Gulf's motion for summary judgment. The district court properly determined that no genuine issue of material fact was before it and that Gulf was a statutory employer of Blanchard. *Barrios.* Accordingly, the summary judgment of the district court is affirmed.[7]

AFFIRMED.

**6.** In addition, Blanchard offered statements to the effect that Gulf "*always* call[s] in contract service companies in the event of any breakdown of compressor engines requiring such major repair," (Dannon Gaudet, Record at 263); "Gulf ... *never* performed any major repairs on their compressor engines," (Otis Mullins, Record at 259); "*none* of these [oil] companies had *any* employees on their staff who performed *any* major repairs on the compressor engines, such as repairing a bearing cap," (Robert Gaudet, Record at 261). (emphasis added).

These affiants were all employees of independent contractors. Although they certainly had knowledge of when *they* had been called by oil companies to perform repair and overhaul work, they would have been ignorant of times the companies had utilized their own employees and had not called on the affiants. The affiants' statements that Gulf and other oil companies *always* utilized service companies for major repairs and *never* made these repairs themselves, were conclusionary and not based on personal knowledge. The district court was correct in disregarding these statements.

**7.** In a November 1982 letter supplementing his brief, Blanchard for the first time argues that reversal of the district court's grant of summary judgment is mandated by our recent decision in *Boudreaux v. American Workover, Inc.,* 680 F.2d 1034 (5th Cir.1982) (en banc). *Boudreaux* does not concern the Louisiana test for a statutory employment relationship, but instead delves into the meaning of "maritime employment" under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 902(3).

Blanchard contends that under *Boudreaux,* he was engaged in "maritime employment" at the time of his injury, within the meaning of the LHWCA. Blanchard was, he now claims, covered by the LHWCA, to the exclusion of the Louisiana Workmen's Compensation Act. Gulf's "statutory employer" defense under the Louisiana statute was, therefore, he asserts, an improper basis for summary judgment.

Blanchard did not, however, so much as hint at his theory based on the LHWCA until nearly a year after the panel decision in *Boudreaux,* which this Court affirmed en banc, was handed down. *Boudreaux v. American Workover, Inc.,* 664 F.2d 463 (5th Cir.1981). At no time prior to his November 1982 letter did Blanchard, either in this Court or in the district court, plead or otherwise contend that he was covered by the LHWCA so as to preclude Gulf's "statutory employer" defense. Because his claim is untimely, we decline to consider it. *See Snapp v. United States Postal Service-Texarkana Management Sectional Center,* 664 F.2d 1329, 1332 (5th Cir.1982); *United States v. $22,640.00 in United States Currency,* 615 F.2d 356, 359 (5th Cir.1980).

As we have said in a case concerning an untimely sought leave to amend a complaint to add a new cause of action:

"Much of the value of the summary judgment procedure in the cases for which it is appropriate ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory." *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469–70 (5th Cir.1967).