Paul A. THOMAS, Plaintiff-Appellant,

v.

CALAVAR CORPORATION, et al., Defendants,

United States of America, Defendant-Appellee.

No. 80–3890.

United States Court of Appeals, Fifth Circuit.

June 28, 1982.

Aubrey E. Denton, Lafayette, La., for plaintiff-appellant.

James P. Klapps, Dorothea Beane, Dept. of Justice, Tort Branch, Civ. Div., Washington, D. C., for defendant-appellee.

Before GEE, RUBIN and GARZA, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

An employee of a subcontractor, engaged pursuant to a contract with the United States Department of Energy ("DOE") to convert an underground salt cavern to a crude oil storage site, seeks to recover damages from the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 (1976) ("FTCA"). Holding that this work is, beyond genuine dispute, part of the trade, business, or occupation of the federal government, and that, therefore, the FTCA does not cover an injury sustained in the course of such work, the district court rendered summary judgment for the United States and dismissed the employee's suit. The employee contends that there is a genuine issue of material fact, Fed.R.Civ.P. 56(c), and that the grant of summary judgment was, therefore, erroneous. Concluding that the district court was, indeed, correct, we affirm.

Paul A. Thomas was injured in November 1978 while employed by Dravo Corporation at Weeks Island, Louisiana, where he was working on the conversion of an underground salt cavern to a storage site for crude oil as part of the Strategic Petroleum Reserve ("SPR") project.[1] The United States had contracted with Parsons-Gilbane, a joint venture and legal partnership, to manage the entire SPR project. The United States had also bought the Weeks Island storage site and had directly contracted for its conversion with Morton-Norwich Products, Inc., which in turn had subcontracted with Dravo Corporation to do some of the work on the salt cavern. Thomas was injured while operating the personnel basket of an aerial work platform. He contends that his injury was due, in part, to the negligence of employees of the United States in failing to make the inspections required by federal regulations and in failing properly to supervise the work.

The United States, as sovereign, is immune to suit unless it waives its immunity. It has, under the FTCA, given "a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390, 397 (1976). We must strictly interpret and apply this waiver. *United States v. Sherwood*, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058, 1063 (1941); *Ware v. United States*, 626 F.2d 1278, 1286 (5th Cir. 1980).

The FTCA permits recovery in tort against the United States only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).[2] Under the law of Louisiana, the place where the alleged act or omission occurred, the principal for whom a contractor is performing work is not liable in tort for negligent injuries suffered by the contractor's employees if the work is part of the principal's "trade, business, or occupation." In those circumstances, the principal, as the "statutory employer" of

---

1. *See generally* 42 U.S.C.A. §§ 6231–6246 (West 1977 & Cum.Supp. 1982).

2. The liability of the United States is set out in 28 U.S.C. § 2674:

    The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

    If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

the injured employees,[3] is liable to them only under Louisiana's Workmen's Compensation Law. La.Rev.Stat.Ann. §§ 23:1032, :1061 (West 1964 & Cum.Supp. 1982);[4] see Barrios v. Engine & Gas Compressor Servs., 669 F.2d 350, 354 (5th Cir. 1982) (per curiam); Blanchard v. Engine & Gas Compressor Servs., 613 F.2d 65, 68–69 (5th Cir. 1980); Scales v. State, 411 So.2d 658, 659 (La.App.1982); Stewart v. Sam Wallace Indus. Co., 409 So.2d 335, 337 (La. App.1981). This rule applies also to the United States; when it is under the facts deemed the statutory employer of a contractor's employees, it gains the same immunity from suit in tort that is enjoyed by employers generally. Roelofs v. United States, 501 F.2d 87, 93 (5th Cir. 1974), cert. denied, 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975); Griffin v. United States, 644 F.2d 846, 847 (10th Cir. 1981); Olveda v. United States, 508 F.Supp. 255, 259 (E.D.Tex.1981) (citing cases); see Johnson v. Greater Baton Rouge Airport Dist., 368 So.2d 206, 209 (La. App.), writ denied, 369 So.2d 458 (La.1979).

The issue in this case is whether Thomas was injured while doing work that is part of the "trade, business, or occupation" of the United States. Thomas contends that the conversion of salt caverns to storage sites for crude oil is not part of the usual and customary business of the United States.

In Klohn v. Louisiana Power & Light, 406 So.2d 577 (La.1981), the Louisiana Supreme Court recently dealt with the nature of the work that is part of an employer's business. The City of Thibodaux had for some time owned and operated an electrical power plant. The City then entered into an agreement with Louisiana Power & Light ("LP&L") to operate the plant. LP&L in turn contracted with Cooper Energy Services, Inc. to perform maintenance work on the plant. One of Cooper Energy Services' employees was injured in the course of his work and sued the City in tort. The Louisiana Supreme Court held that the work was part of the City's business of providing electrical service "notwithstanding the fact that [the City] had contracted with LP&L for the execution by LP&L 'of the whole or

---

3. See Klohn v. Louisiana Power & Light, 406 So.2d 577, 582 (La.1981).

4. Section 1032 provides in pertinent part:
EXCLUSIVENESS OF RIGHTS AND REMEDIES; EMPLOYER'S LIABILITY TO PROSECUTION UNDER OTHER LAWS
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
Section 1061 provides:
PRINCIPAL CONTRACTORS; LIABILITY
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to

perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
These statutes apply to work undertaken by the United States on its property lying "within the exterior boundaries of any State." 40 U.S.C. § 290.

any part of the work [it had] undertaken.'" *Id.* at 582 (quoting operating agreement). The City was, therefore, the injured employee's statutory employer, and the exclusive remedy against it was under the Louisiana Workmen's Compensation Law. This is the approach we had previously taken in *Blanchard v. Engine & Gas Compressor Servs., supra.*

▆▆▆ Unlike *Blanchard*, however, in which the evidence failed to address this issue and we found that further district court proceedings were necessary, 613 F.2d at 73, the record in this case demonstrates beyond genuine dispute that Congress authorized DOE to establish, operate, and maintain underground crude oil storage sites, and that DOE in fact constructs such facilities as part of its regular operations. The Energy Policy and Conservation Act authorizes DOE to "acquire by purchase, condemnation, or otherwise, land or interests in land for the location of storage and related facilities," 42 U.S.C. § 6239(f)(4)(B) (1976 & Supp. III 1979); to "construct, purchase, lease, or otherwise acquire storage and related facilities," *id.* § 6239(f)(4)(C); to "use, lease, maintain, sell, or otherwise dispose of storage and related facilities," *id.* § 6239(f)(4)(D); and to "execute any contracts necessary to carry out the provisions of [the] Strategic Petroleum Reserve Plan," *id.* § 6239(f)(4)(G). An uncontradicted affidavit states that DOE "is responsible for the construction of the national Strategic Petroleum Reserve," and that, in fulfillment of that responsibility, DOE undertook to perform the operations necessary to convert the Weeks Island salt mine. That it elected to perform the work through contractors and subcontractors, rather than through its own employees, is not dispositive, for the statutory employer test under

Louisiana law does not turn on whether the statutory employer utilizes its own employees to perform similar work. *Barnes v. Sun Oil Co.,* 362 So.2d 761, 764 (La.1978); *Traylor v. Shell Oil Co.,* 400 So.2d 342, 348 (La. App.), *writ denied,* 405 So.2d 530 (La.1981); *Turner v. Oliphant Oil Corp.,* 200 So. 513, 513–14 (La.App.1940).[5] The United States does not contend that it would be a principal or statutory employer under the Louisiana Workmen's Compensation Law whenever a federal agency is authorized to contract for particular work, and we do not suggest that result. *See Freeman v. Chevron Oil Co.,* 517 F.2d 201, 206 (5th Cir. 1975); *Cole v. Chevron Chem. Co.,* 427 F.2d 390, 394 (5th Cir. 1970);· Malone, *Principal's Liability for Workmen's Compensation to Employees of Contractor,* 10 La.L.Rev. 25, 27 (1949). Rather, as with employers generally, its status as a statutory employer must be determined on the facts of each case.[6] The contractor in this case was merely an instrument to perform the work required by DOE's mission under the Energy Policy and Conversation Act. *Cf. Scales v. State,* 411 So.2d at 659 (state agency fulfilled its statutory mission through contractor; tort suit barred by Workmen's Compensation Law). The district court's conclusion that this work is part of DOE's usual and customary business is supported by the record and is consistent with Louisiana law. *Accord, Bergeron v. United States,* 495 F.Supp. 222, 225–27 (W.D.La. 1980); *see Hudson v. Aetna Cas. & Sur. Co.,* 299 So.2d 499, 501 (La.App.), *writ denied,* 302 So.2d 20 (La.1974).

Whether the United States' employees acted properly or improperly is not the issue. The sole issue is whether the work is part of its usual and customary business. In this case that fact has been established beyond genuine dispute.

---

**5.** As we stated in *Blanchard v. Engine & Gas Compressor Servs.*:

[although] the principal has no employees of his own to do the work, this fact alone will not preclude the application of § 1061, provided all other evidence indicates the activity is an integral part of the principal's business.... [T]he mere fact that a principal contracts out all of his work does not neces-

sarily mean he is *not* a statutory employer for purposes of avoiding tort liability.
613 F.2d at 71.

**6.** *Dixon v. Tugwell,* 409 So.2d 343, 344 (La. App.1981); *Redler v. Louisiana Power & Light Co.,* 383 So.2d 409, 411 (La.App.1980); *see Fonesca v. Marlin Marine Corp.,* 410 So.2d 674, 677 (La.1981).

For these reasons, the district court's grant of summary judgment is AF-FIRMED.