**Edward B. LINDSEY**

v.

**CHEVRON U.S.A., INC., et al.**

Civ. A. No. 80–3706.

United States District Court,
E.D. Louisiana.

June 30, 1983.

C. Scott Reis, Leger & Mestayer, Michael J. Mestayer and Walter J. Leger, Jr., New Orleans, La., for plaintiff.

McLoughlin, Barranger, Provosty & Melancon, Lloyd C. Melancon, New Orleans, La., for Chevron U.S.A., Inc.

Drury & Lozes, Steven M. Lozes, Felicien P. Lozes, New Orleans, La., for Oceanic Butler, Inc. & Northwest Ins. Co.

OPINION

ARCENEAUX, District Judge.

Plaintiff, Edward B. Lindsey ("Lindsey") instituted this suit based on diversity jurisdiction against Chevron U.S.A., Inc. ("Chevron") for injuries sustained on March 8, 1980, while working in Chevron's South Pass Block 24 Field E–5 Bunkhouse near Burrwood, Louisiana on the East Bank of the Southwest Pass of the Mississippi River. Chevron impleaded Lindsey's employer and intervenor herein, Oceanic Butler, Inc. ("OBI"), an offshore catering and housekeeping company which had contracted with Chevron to provide catering services to a number of its manned facilities including the E–5 Bunkhouse. A trial before the Court without a jury was held on January 10, 1983, and the Court took the matter under submission. Having thoroughly reviewed the testimony and evidence, the memoranda of counsel and the law, the Court issues the following opinion.

It is undisputed that on the morning of March 8, 1980, Lindsey was working in his capacity as a "BR" or Bed Room man for OBI in Chevron's E–5 Bunkhouse. His duties included making up beds, mopping, sweeping and generally cleaning portions of the E–5 Bunkhouse. After cleaning the two upstairs bedrooms, the plaintiff arranged his mop, broom, squeegee and bucket partially filled with soapy water in his right hand and began to descend the interior stairway. In attempting the first step, plaintiff slipped on the landing. As he began to fall, he grabbed the handrail on the left descending wall with his left hand. In so doing, the top portion of the handrail "tore loose" from the wall, and plaintiff continued his fall down the steps, taking with him his cleaning apparatus and the piece of broken handrail. Although the accident itself was unwitnessed, Lindsey was found at the bottom of the stairs by his immediate supervisor, who had heard the attendant commotion, and by Chevron's temporary assistant field foreman, who arranged for Lindsey's emergency medical treatment. Plaintiff has been receiving medical and weekly compensation benefits pursuant to the Louisiana Workmen's Compensation Act. La.Rev.Stat. 23:1021, et seq.

Likewise, it is uncontested that OBI was providing the housekeeping services being performed by the plaintiff at the time of his accident pursuant to contract with Chevron. At all pertinent times, Chevron employed the services of independent catering and housekeeping companies at eight of the eleven manned structures located in the Eastern Division of the Production Department; those Eastern Division Chevron employees who did their own cooking and cleaning were located on remote, isolated structures. Chevron has employed contracted catering and housekeeping services at its E–5 Bunkhouse since that facility became operational.

The testimony of the Chevron field foreman showed that Chevron's Eastern Division employs approximately 1,700 people, 400 of whom work "seven and seven". Those on this hitch must live in bunkhouse facilities and work on outlying structures. The testimony of Chevron personnel also established not only that workers would be exposed to unhealthy and unsafe conditions if food and housekeeping services were not performed in the living quarters, but that the resulting morale and manning problems would probably halt operations altogether.

The Court's initial focus falls on the "statutory employer" defense raised by Chevron. The Louisiana Workmen's Compensation Act provides that a principal for whom a contractor is performing work that is part of the principal's "trade, business or occupation" is liable to the contractor's employees for workmen's compensation benefits. La.Rev.Stat. 23:1061. A statutory employer subject to paying compensation benefits cannot be held liable in tort to an injured employee of the contractor since the compensation remedy is exclusive. La.Rev. Stat. 23:1032; *Blanchard v. Engine & Gas Compressor Services, Inc.,* 613 F.2d 65 (5th

Cir.1980). After unsuccessfully seeking a pronouncement on the issue from the Louisiana Supreme Court, the Court in *Blanchard* rejected strict application of the "essential to the business" test in determining the existence of the statutory employment relationship and held that the proper standard is "whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary practice of the principal or others in the same operational business". *Blanchard, supra* at 71.

The Fifth Circuit then set forth the specific considerations on which this legal standard was based:

> More specifically, we should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal. If either of these situations exist, then there is a statutory employment relationship and the inquiry ends there. If, however, the principal does not normally engage in this type of activity, or if it is not normally a part of his practices, then it is necessary to determine if others engaged in businesses similar to that of the principal customarily do this type of work or if it is an integral part of their businesses. If either of these inquiries yields an affirmative answer, then the general custom of the trade will control to make the relationship between the principal in question and his contractors' employees that of statutory employer and employee. *Blanchard, supra* at 71; *see also, Barrios v. Engine & Gas Compressor Services,* 669 F.2d 350, 354–355 (5th Cir.1982).

While this Court is unaware of any Louisiana Supreme Court decision specifically approving the interpretation of Louisiana law enunciated by the Fifth Circuit in *Blanchard,* it is clear that a principal's election to perform work through contractors, rather than through its own employees, "is not dispositive, for the statutory employer test under Louisiana law does not turn on whether the statutory employer utilizes its own employees to perform similar work". *Thomas v. Calavar Corp.,* 679 F.2d 416, 420 (5th Cir.1982); *see also, Blanchard, supra,* 613 F.2d at 71; *Barnes v. Sun Oil Co.,* 362 So.2d 761, 764 (La.1978).[1]

Likewise, it is established that "(w)hile ordinary maintenance and repairs are part of an employer's regular trade, business, or occupation, the usual or customary practice of the principal is not restricted to such maintenance and repairs but embraces every activity that is an integral and necessary part of the principal's regular business". *Elliott v. Louisiana Power & Light Co.,* 679 F.2d 430, 431 (5th Cir.1982). The Fifth Circuit has interpreted the recent Louisiana Supreme Court treatment of statutory employment in *Klohn v. Louisiana Power & Light Co.,* 406 So.2d 577 (La.1981), as "implicitly hold(ing) that, because plaintiff's work in that particular case involved ordinary maintenance and repairs, his activity was an integral and necessary part of the regular trade, business, or occupation of defendant". *Elliott, supra,* 679 F.2d at 431.

In the case *sub judice,* it is undisputed that Chevron engages in the business of exploration, location and production of hydrocarbons such as oil and gas; its production facilities often include housing, such as the E–5 Bunkhouse, for employees working "seven and seven" hitches. Chevron was solely responsible for the control, management, operation and use of the E–5 Bunk-

---

**1.** The task of the District Court in choosing an appropriate standard to test statutory employment in such situations is complicated by what appears to be a recently developing dichotomy within the Circuit as evidenced by the following:

> "... if, however, the work is customarily contracted out for performance by contractors (rather than by the principal's own employees), it is not part of the 'trade, business, or occupation' of the principal, and the principal is not a statutory employer".

*LeBlanc v. Goldking Production Co.,* 706 F.2d 149 (5th Cir.1983). However, this Court has adopted the standard set forth in *Blanchard* and its progeny, *Calavar, supra,* and as reflected by Louisiana Courts, *Henderson v. The Administrators of Tulane University of Louisiana, et al.,* 426 So.2d 291 (La.App.1983).

house and elected to employ contracted catering and housekeeping services at the facility; at the same time, Chevron instructed its employees at remote and/or isolated and manned facilities to perform these tasks themselves. In any event, Chevron insured that such services were provided at all manned facilities in its Eastern Division.

There is no doubt in this Court's opinion that the work performed by plaintiff was ordinary maintenance in its purest form. While this finding arguably could support the conclusion that the work is an integral part of Chevron's business under *Elliott, supra,* and *Klohn, supra,* this Court further believes that providing adequate housing for its employees was an integral and necessary part of Chevron's production efforts. These employees are as much "assigned" to these living quarters as they are to their work platforms; it is axiomatic that provision for food and housekeeping is integral and necessary to the operation of these production housing facilities. *Compare, Henderson v. The Administrators of Tulane University of Louisiana, et al.,* 426 So.2d 291 (La.App.1983).

Based on these facts and findings, the Court concludes that the activity done by Lindsey and OBI was an integral and necessary part of Chevron's production business. Therefore, plaintiff's claim against Chevron is statutorily barred.

### INDEMNITY

At the trial in this matter, counsel for Chevron and OBI indicated that should Chevron prevail as a matter of law, the parties could amicably resolve or pretermit the issues of recoverability and quantum of any attorney's fees and legal costs incurred by Chevron under the two agreements existing between these parties. (Transcript, pp. 3–5). Accordingly,

IT IS ORDERED that judgment be entered in favor of defendant Chevron U.S.A., Inc. and against plaintiff Edward B. Lindsey, after the Court has been promptly notified that the remaining third party issues have been amicably resolved.